PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BERK ENTERPRISES, INC., *et al.*, | ) | |
| | ) | CASE NO. 4:11CV02119 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| GEORGE D. BROWN, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 15] |

The locus of this controversy is a warehouse in Howland Township, Ohio.  Plaintiffs bring this action under the auspices of 42 U.S.C. § 1983 and allege that the local fire department, through its efforts to impose various safety requirements relating to the use of the warehouse, inflicted a number of constitutional injuries.  Presently, the Court must decide whether, for the reasons articulated in Defendants' motion for summary judgment, there are no facts suitable for trial and Defendants are entitled to judgment as a matter of law.  Having studied the briefs, exhibits and governing law in the matter, the Court hereby grants Defendants' motion.

## I.  Factual and Procedural History

### a. Factual Background

Plaintiffs are Robert Berk, Berk Enterprises, Inc., and Seven Berks Realty, LLC.  Berk Enterprises is in the business of, among other things, importing and distributing paper and plastic commodities.  ECF Nos. 15-5 at 17, 23-24.  Seven Berks Realty is a real estate holding company. ECF No. 15-5 at 9.  Berk is the President and majority shareholder of Berk Enterprises, and a principal of Seven Berks Realty.  ECF Nos. 15-5 at 11-12.

(4:11CV02119)

Defendants are various officials of Howland Township, Ohio, who are sued in their official and individual capacities, and Howland Township itself.  The officials named in this lawsuit are George Brown, who at all relevant times was the Fire Chief, Timothy Thomas, who at all relevant times was the Assistant Fire Chief, as well as Sally Wehmer, Matthew Vansuch and Rick Clark, who at all relevant times were the Trustees of Howland Township.  ECF No. 3-1 at 3.

In or around the beginning of 2009, Seven Berks Realty purchased a roughly 200,000 square feet building located at 1554 Thomas Road in Howland.  ECF No. 15-5 at 9, 37.  Seven Berks Realty then leased the building to Berk Enterprises, which used the facility as a warehouse to store plastics and other materials in connection with its distribution business.  ECF No. 15-5 at 10, 24.  The plastics included consumer products such as cutlery, cups and straws.  ECF No. 15-5 at 20-23.

The material events of this lawsuit involve Plaintiffs' interaction with the Howland Fire Department, and, in particular, Chief Brown, from the time Berk Enterprises assumed occupancy of 1554 Thomas Road until March, 2010, when Berk Enterprises received a certificate of occupancy from the Trumbull County Building Department ("Building Department").  In a letter dated March 2, 2009, Chief Brown wrote to Berk and listed a number of fire safety issues pertaining to the warehouse that "need to be addressed."  ECF No. 18-4.  In particular, Chief Brown stated that the Building Department "will need to issue a change of use on the building for an occupancy permit for new operations" and that Berk Enterprises "will have to meet the allowable storage [height] for the type or [sic] commodities being stored" which was "no higher than five feet."  Chief Brown's writing also discussed upgrades to the sprinkler system and the repair of a fire hydrant.  Berk testified that Chief Brown's adamance that he comply with these and other related safety requirements in the

2

(4:11CV02119)

following months caused him to suffer economic hardship and deprived him of the ability to use the warehouse to its full potential.  ECF No. 15-5 at 96-99.

Plaintiffs' primary quarrel in this litigation is that, even though the Building Department retained exclusive jurisdiction to determine whether a "change of use" had occurred with respect to 1554 Thomas Road, Chief Brown and Assistant Chief Thomas "unofficially" determined that Plaintiffs' use of the warehouse was a change from the manner in which the prior occupant had used the building.  ECF No. 18 at 5.  This determination, according to Plaintiffs, was the basis for Chief Brown's and Assistant Chief Thomas' insistence that Plaintiffs make costly and unnecessary modifications to the warehouse, to which Plaintiffs acquiesced in an attempt to "placate and appease" them.  ECF No. 18 at 6-7.  Berk testified that at Chief Brown's prompting, he installed additional doors, upgraded the fire alarms, installed smoke beams and smoke sensors, added strobe lights, repaired a fire hydrant and pursued upgrades to the sprinkler system.  ECF No. 15-5 at 92-98.

Berk also testified that Chief Brown directed him to stack his goods no higher than five feet[1] even though Berk purchased the building with the intention of stacking his merchandise higher.  ECF No. 15-5 at 116-17.  As a consequence, Berk was forced to rent fifty or sixty trailers to store the overflow of good, and hire additional employees to move the goods.  ECF No. 15-5 at 116.

---

[1] Chief Brown later, as an accommodation, permitted Berk to stack to six feet.  ECF No. 15-5 at 117.

(4:11CV02119)

Ultimately, on March 31, 2010, the Building Department issued a certificate of occupancy concluding that Plaintiffs' use of the warehouse did not constitute a change of use.  ECF Nos. 15-9 at 6; 15-1 at 81.  The Building Department required, however, that Plaintiffs continue to store "Group A" plastics at a maximum height of five feet.  ECF No. 15-9 at 6.  Plaintiffs successfully appealed this restriction to the Ohio Board of Building Appeals, which issued a variance permitting, subject to some conditions, the storage of plastics at twelve feet in certain areas of the warehouse. ECF No. 15-9 at 3-4.  Additional relevant facts will be set forth as necessary.

### b. Procedural Posture

On September 8, 2011, Plaintiffs filed a complaint (ECF No. 3-1) in the Trumbull County Court of Common Pleas, alleging that (1) Plaintiffs were deprived of the full use of their property for the storage of materials and were also required to spend monies to comply with Defendants' orders; (2)  Plaintiffs did not receive notice of any violation of the fire code and the Town Trustees never appointed a board to hear an appeal from any such violation; (3) Defendants did not require the former owner of 1554 Thomas Road or owners of similar real estate within Defendants' jurisdiction to adhere to the same requirements imposed upon Plaintiffs; and (4) the Town Trustees failed to properly supervise Chief Brown and Assistant Chief Thomas.  According to the complaint, Defendants' actions violated the Fifth and Fourteenth Amendments to the United States Constitution and therefore are actionable under 42 U.S.C. § 1983.  Plaintiffs also claim that Defendants violated §§ 1, 14 and 16 of Article I of the Ohio Constitution.

4

(4:11CV02119)

Defendants properly removed the action from State court by invoking this Court's jurisdiction over questions of federal law.  *See* 28 U.S.C. § 1331; 28 U.S.C. § 1441.  Thereafter, on July 16, 2012, Defendants moved for summary judgment on the entire complaint.  ECF No. 15 at 34.  In support of their motion, Defendants filed a memorandum of law and various exhibits.  On October 12, 2012, Plaintiffs filed an opposition brief, which was not responsive to all of Defendants' arguments.  ECF No. 18.  Defendants filed a reply on November 7, 2012.  ECF No. 21.  The motion for summary judgment is ripe for the Court's review and adjudication.

## II. Legal Standard

The summary judgment procedure is "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quotations omitted).  "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law.'" *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (*quoting* Fed. R. Civ. P. 56(a)).  "This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). "Where the moving party carries its initial burden, the nonmoving party 'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of East Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (*quoting Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)). "'A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for

5

(4:11CV02119)

the non-moving party.'" *U.S. ex rel. Wall v. Circle C Construction, LLC*, 697 F.3d 345, 351 (6th Cir.

2012) (*quoting Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)).  It is well-settled that a

court deciding a motion for summary judgment must view the evidence and draw all reasonable

inferences therefrom  in the light most favorable to the non-moving party.  *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

### III.  Discussion

The Court's analysis is guided by several preliminary observations.  To prevail under 42

U.S.C. § 1983,[2] a plaintiff must prove "(1) the deprivation of a right secured by the Constitution or

laws of the United States (2) caused by a person acting under the color of state law."  *Sigley v. City*

*of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).  Defendants interpret the complaint as asserting

the following constitutional deprivations: an unlawful taking of private property; violations of

substantive and procedural due process; and denial of equal protection of the laws.  ECF No. 15 at

25.  Defendants also allege a *Monell* claim against Howland Township.  ECF No. 15 at 25.  Plaintiffs

do not object to Defendants' interpretation of the complaint.  The Court, based upon its own review

of the pleadings, agrees with the parties' identification of the operative legal theories.  The Court also

notes that although Defendants move for summary judgment on the entire complaint, Plaintiffs

oppose summary judgment only with respect to their equal protection and *Monell* claims.  ECF No.

---

[2] Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

(4:11CV02119)

18 at 23-34.  While it appears that Plaintiffs have abandoned their remaining claims for relief, summary judgment on those claims can not be granted unless Defendants discharge their burden of demonstrating the absence of a genuine issue of a material fact.  *See Thurmond v. County of Wayne,* *447 Fed. Appx. 643, 652 (6th Cir. 2011)* ("A motion for summary judgment must not be granted simply because the nonmoving party fails to oppose the motion").  Having articulated the basic ground rules upon which the Court will review Defendants' summary judgment motion, next, the Court examines the substantive arguments raised by the parties in the discussion below.

### A. Equal Protection Claim

Plaintiffs characterize their action as a "class-of-one" Equal Protection claim, which requires proof that the government treated them differently from others similarly situated without any rational basis for the difference in treatment.  ECF No. 18 at 23.  According to Plaintiffs, the prior occupant of 1554 Thomas Road, Warren Molded Plastics ("WMP"), also used the building to store plastic materials; yet, Chief Brown did not require WMP to undertake the same costly modifications or restrict its stacking of commodities to a maximum height of five feet.  ECF No. 18 at 27.  Plaintiffs claim that Chief Brown's disparate treatment of Plaintiffs was motivated by malevolence or ill-will. ECF No. 18 at 25.

In response, Defendants assert that they are entitled to summary judgment because the record does not show either that Plaintiffs were similarly situated with WMP in all material respects or that Chief Brown harbored any animus towards Plaintiffs.  ECF No. 21 at 9-10.  Furthermore, argue Defendants, there was a rational basis for treating WMP differently from Plaintiffs:  WMP primarily engaged in manufacturing inside the building while Plaintiffs did not.  ECF No. 21 at 11-12.

(4:11CV02119)

The Fourteenth Amendment to the United States Constitution provides in part: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005) (*quoting Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S. Ct. 190, 67 L. Ed. 340 (1923)).  "The Equal Protection Clause prohibits discrimination by the government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference."  *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011).  The third type of discrimination gives rise to what is known as a "class-of-one" Equal Protection claim; *Warren v. City of Athens, Ohio*, at 710; which was recognized by the United States Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

To succeed on a class-of-one claim, a plaintiff must show that he or she was treated differently than those "similarly situated in all material respects."  *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012).  The plaintiff must also show that "the adverse treatment [he or she] experienced was so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational."  *Id.* (quotations omitted).  This showing is made either by (1) "negativing every conceivable reason" for the government's actions or (2) by demonstrating that the actions were motivated by "animus or ill-will."  *Id.*  The defendant "has no obligation to produce evidence to sustain the rationality of its actions; its choice

8

(4:11CV02119)

is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *TriHealth, Inc. v. Board of Commissioners*, 430 F.3d 783, 790 (6th Cir. 2005).

The Sixth Circuit has observed that class-of-one claims are received by the courts with skepticism. *Loesel v. City of Frankenmuth*, 692 F.3d at 461. This is because, unless "carefully circumscribed," such a claim could provide a federal cause of action for almost every State executive and administrative decision, and would inappropriately thrust federal courts into the unwanted and offensive role of second-guessing the reasonableness of "broad areas of state and local decision-making." *Id.* at 462 (*quoting Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004)). Consequently, the Sixth Circuit has emphasized that a plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Id.*

### 1. **Similarly Situated**

Plaintiffs have the burden at trial to prove not only that they were treated differently from WMP, but also that Plaintiffs and WMP were similarly situated "in *all material respects*." *Loesel v. City of Frankenmuth*, 692 F.3d at 462 (emphasis in original). "In determining whether individuals are similarly situated, a court should not demand exact correlation, but should instead seek relevant similarity." *Bench Billboard v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) (quotations omitted). "[D]isparate treatment of persons is reasonable justified if they are dissimilar in some material respect." *TriHealth, Inc. v. Board of Commissioners*, 430 F.3d at 790.

The record discloses that the prior occupant, WMP, occupied 1554 Thomas Road from 2006 to 2008, used the facility to manufacture plastic parts and clean plastic reels. ECF Nos. 15-6 at 10-11; 18-3 at 1. WMP utilized twenty-seven molding machines in the building to make the plastic

9

(4:11CV02119)

parts.  ECF No. 15-6 at 10.  As with any manufacturing process, WMP stored material incident to

the operation.  Plastic raw material was stored briefly before it was utilized in the molding machines,

and then the finished plastic pieces were stored briefly because they were shipped out.  The finish

products were stored on site for approximately two weeks.  ECF No. 15-6 at 44-45.  Approximately

half of the building was used for storage; the other half was used for the manufacturing process

involving the molding machines.  ECF No. 15-1 at 41.  Assistant Chief Thomas confirmed in his

affidavit that, based on his prior inspections, the storage of material was incidental to the

manufacturing process and was not the primary function of WMP's enterprise.  ECF No. 15-8 at 2.

There is no dispute that Plaintiffs used the building solely for warehousing goods.  ECF Nos.

15-1 at 38; 15-12 at 17; 15-5 at 21.  Plaintiffs engaged in no manufacturing.  ECF No. 15-5 at 17.

Moreover, Plaintiffs' plastic products were stored throughout the entirety of the warehouse.  ECF

Nos. 15-1 at 39; 18-20 at 1.

The difference in which Plaintiffs and WMP used the facility at 1554 Thomas Road is a

material one.  The Ohio Building Code defines "change of occupancy"[3] as a "change in the purpose

or level of activity within a structure that involves a change in the application of the requirements

of the code."  O.B.C. § 3402.1.  Chief Brown, not unreasonably, regarded Plaintiffs' use of the

facility as a change in the purpose or level of activity in comparison with that of WMP.  Moreover,

National Fire Protection Association (NFPA) Rule 25, which was adopted by the 2009 Ohio Fire

Code; see O.F.C. § 901.6.1 (2009); provides in relevant part that (1) a new occupant shall not make

_____

[3] The terms "change of use" and "change of occupancy" are used interchangeably.  *See,*
*generally*, ECF No. 15-1 (deposition of Michael Sliwinski).

10

(4:11CV02119)

changes in the occupancy of the building "without evaluation of the fire protection system for their capability to protect the new occupancy, use or materials"; (2) where a there is a change in occupancy, the new occupant must take steps to "evaluate the adequacy of the installed system in order to protect the building or hazard in question"; and (3) "[w]here the evaluation reveals a deficiency causing a threat to life or property, the property owner shall make appropriate corrections." ECF No. 18-19.  There is no dispute that Chief Brown had the authority to enforce the fire code. ECF No. 15-1 at 80.  Significantly, it is apparent, through numerous letters written to Berk and Michael Sliwinski, the Building Department's Chief Building Official, that Chief Brown was highly concerned about the hazards associated with "Group A" plastics in Plaintiffs' facility. ECF Nos. 18-19 at 3; 18-21 at 2; 18-15 at 1-2.  According to Chief Brown, Group A plastics have high heat release rates and can create "significant" firefighting challenges, including "the need of large quantities of water" to control a fire including such plastics. ECF No. 18-19 at 3.  In one letter to Sliwinski, Chief Brown stated that his "prime concern" was that Plaintiffs were storing plastics throughout "virtually the entire" space of the warehouse. ECF No. 18-20 at 1.

The record establishes that the differences in the way WMP and Plaintiffs used the building created a rational basis for (1) Chief Brown to be concerned about the fire hazards associated with Plaintiffs' method of storing plastics throughout the warehouse, in comparison with WMP's storage of plastics in only half of the warehouse; and (2) Chief Brown to interpret the relevant administrative codes as permitting him to instruct that Plaintiffs modify the warehouse to make it safer.  Plaintiffs do not dispute the foregoing facts and submit nothing to show that the difference is not material. Plaintiffs merely cite to law stating that this issue is generally a factual one for the jury. *Loesel v.*

(4:11CV02119)

*City of Frankenmuth*, 692 F.3d at 463.  Even so, because Defendants have met their summary judgment burden, Plaintiffs are not absolved of their corresponding burden to produce facts demonstrating the existence of a genuine issue.  *Ellington v. City of East Cleveland,* 689 F.3d at 552.

On this basis alone, Defendants are entitled to summary judgment on the Equal Protection claim.  Nonetheless, for completeness, the Court will also examine the remaining elements.

### 2.  **Animus**

To prove animus, Plaintiffs must prove that Chief Brown and Assistant Chief Thomas harbored ill-will, antagonism, hostility or animosity towards Plaintiffs.  *Loesel v. City of Frankenmuth*, 692 F.3d at 466.  The evidence, moreover, must demonstrate that the ill-will or posture is directed at Plaintiffs *themselves* and not at any activity in which Plaintiffs participated. *See, e.g.,* *Taylor Acquisitions, LLC v. City of Taylor*, 313 Fed. Appx. 826, 838 (6th Cir. 2009); *Ziss Bros. Construction Co. V. City of Independence, Ohio*, 439 Fed. Appx. 467, 479 (6th Cir. 2011).

The Court agrees with Defendants that the record is devoid of any indication of ill-will on the part of either Chief Brown or Assistant Chief Thomas.  Plaintiffs argue that Chief Brown had "raised issues" in the past in regard to other buildings that Berk Enterprises had occupied.  ECF No. 18 at 26.  Plaintiffs point to evidence showing that, with respect to other warehouses Plaintiffs have used, Chief Brown had determined that the sprinkler systems or Plaintiffs' storage practices were not complaint with applicable codes.  ECF No. 18 at 25-26.  This simply is not evidence of animus. Even Berk believed that Chief Brown harbored no hostility towards him.  He testified: "You know, I always respected him and I think he respected me, but he held fast in his position."  ECF No. 15-5 at 117.  Consequently, whatever Chief Brown's motivations were, Plaintiffs cannot show that it was

12

(4:11CV02119)

predicated upon any personal animus.

### 3. No Conceivable Basis

To establish the absence of a rational basis without evidence of animus, Plaintiffs must present evidence adequate to negate every conceivable reason for the government's actions. *Loesel v. City of Frankenmuth*, 692 F.3d at 465. Plaintiffs carry a heavy burden, because the "governmental action subject to equal protection scrutiny under the rational basis test must be sustained if *any* conceivable basis rationally supports it." *TriHealth, Inc. v. Board of Commissioners*, 430 F.3d at 790 (emphasis in original). Yet, Plaintiffs do not point to any facts that undermine all conceivable rationality of the conduct at issue.

As already discussed, the record demonstrates that Chief Brown reasonably believed that Plaintiffs' occupancy constituted a change of use, that Chief Brown was endowed with the authority to enforce the fire code, and that he was concerned not only with the presence of plastics in Plaintiffs' warehouse but also with Plaintiffs' practice for storing plastics throughout the entirety of the warehouse. Plaintiffs contend, however, that Chief Brown's determination must have been irrational because the Building Department later determinated that there was no change of use. ECF No. 18 at 27. The Court disagrees. That an administrative body interpreted a code differently does not mean that Chief Brown's opinion was irrational, and it does not negate his legitimate fire safety concerns. Plaintiffs also contend that Chief Brown acted irrationally because he "selectively" enforced a five feet stacking restriction against Plaintiffs, but not WMP. ECF No. 18 at 27. This argument has no merit. Both parties agree that the operative code, NFPA 13, did in fact restrict the stacking of plastics in Plaintiffs' warehouse to five feet. ECF Nos. 21 at 11; 18 at 27; 15-1 at 97.

13

(4:11CV02119)

That the same restriction was not applied to WMP does not exempt Plaintiffs from complying with the governing code. Moreover, Plaintiffs' own expert, testified that Chief Brown possessed discretion in the enforcement of the fire code. ECF No. 15-3 at 91. Chief Brown may have exempted WMP from the five feet restriction for any number of legitimate reasons. He might have been less concerned with WMP's storage practices because it is primarily a manufacturing facility. He might have even failed to enforce the restriction by mistake. In any event, an Equal Protection violation does not arise every time a government official fails to enforce a law either erroneously or through the use of discretion. Indeed, the United States Supreme Court has observed that a class-of-one claim is particularly inappropriate where the exercise of discretion is involved. *See Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 604, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) (noting, as an example, that "allowing an equal protection claim on the ground that a [speeding] ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action); *see also Jennings v. City of Stillwater*, 383 F.3d 1199, 1210 (10th Cir. 2004) (inappropriate for federal courts to act as "general-purpose second-guessers of the reasonableness" of local decisions). In final analysis, Plaintiffs do not even attempt to negate every conceivable reason for the disparity in treatment. At most, Plaintiffs point to the difference and argue that the difference itself is conclusive of irrationality. This is insufficient as a matter of law.

For the foregoing reasons, the Court concludes that Plaintiffs cannot show that Defendants' actions were "so unrelated to the achievement of any combination of legitimate purposes" that the conduct can only be irrational. *Loesel v. City of Frankenmuth*, 692 F.3d at 462. The Court grants

14

(4:11CV02119)

Defendants' motion for summary judgement on the class-of-one Equal Protection violation claim.

### B. Municipal Liability Under *Monell*

Plaintiffs claim that Howland Township and its Trustees are liable for the actions of Chief Brown and Assistant Chief Thomas because "they failed to meaningfully intervene, investigate and punish the allegations of unconstitutional conduct . . . while Chief Brown and Assistant Chief Thomas perpetrated its [sic] irrational conduct." ECF No. 18 at 32. In particular, Plaintiffs assert that Howland was "indifferent" to the violation of Plaintiffs' equal protection rights. ECF No. 18 at 30. Defendants maintain that they are entitled to the entry of summary judgment because the record fails to demonstrate any deliberate indifference on the part of Howland. ECF No. 21 at 16.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court announced that municipalities may be held liable under § 1983 if the injury was caused by a "policy" or "custom" of the municipality. The reason for restricting municipal liability to injuries caused by city policy or custom was the Supreme Court's determination in the same opinion that Congress did not intend for § 1983 to impose *respondeant superior* liability upon municipalities for injuries inflicted solely by its employees or agents. *Id.* at 695. Therefore, "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 406-407, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (emphasis in original). Rather, there must have been "deliberate conduct" on the part of the municipality. *Board of County Commissioners of Bryan County v. Brown*, at 404.

15

(4:11CV02119)

Consequently, "municipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-83, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

Plaintiffs' theory of municipal liability is based upon Howland's purported failure to act in response to Chief Brown and Assistant Chief Thomas' equal protection violations.  ECF No. 18 at 30-32.  The Sixth Circuit has "identified two ways to demonstrate a municipality's need to act." *Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6ᵗʰ Cir. 2012).  First, "[t]he plaintiff can present evidence showing that the municipality possessed actual knowledge indicating a deficiency with the existing policy or training (or lack thereof), such as where there have been recurring constitutional violations." *Id.* at 648.  Otherwise,  "the plaintiff must show that the need to act should have been plainly obvious to the [municipality's] policymakers, who, nevertheless, are deliberately indifferent to the need." *Id.* at 648-48 (quotations omitted).  The latter arises "in a narrow range of circumstances where a violation of federal rights may be a *highly predictable* consequence of [the municipality's failure to act]." *Id.* at 649 (emphasis in original; quotations omitted).  Deliberate indifference is a "very high standard of culpability; exceeding gross negligence." *Ross v. Dugan*, 402 F.3d 575, 590 n.7 (6ᵗʰ Cir. 2004) (quotations omitted).

Plaintiffs do not submit any evidence demonstrating any deficiency with existing policy or training.  Rather, Plaintiffs attempt to prove that the need to act should have been obvious to Howland's policymakers.  In this vein, Plaintiffs point to letters written by Chief Brown and Assistant Chief Thomas, on which the Howland Township Administrator was copied, that show "the

(4:11CV02119)

unnecessary building requirements" being imposed by Chief Brown.  ECF No. 18 at 30.  Plaintiffs

also submit evidence of meetings between representatives of Berk Enterprises, Howland Township

and the Fire Department, during which Berk voiced complaints about the requirements imposed by

Chief Brown.  ECF No. 18 at 31.

Plaintiffs cannot prevail on the *Monell* claim for two reasons.  First, having determined that

Plaintiffs cannot succeed on their Equal Protection claim, the Court, by implication, concludes that

an Equal Protection violation could not have been understood by Howland's policymakers as a

"highly predictable consequence" of their failure to respond to Plaintiffs' complaints.  Second, even

if Plaintiffs could prevail upon their Equal Protection claim, they cannot establish that the need to

act was "plainly obvious."  Nowhere in the aforementioned letters or meetings were Chief Brown's

actions with respect to WMP discussed.  Without such information, Howland officials could not

have had any basis to form an opinion about the possibility of an Equal Protection violation.[4]

The Court grants summary judgment in favor of Defendants on the *Monell* claim.

**C. Takings Claim**

Defendants assert that there is no genuine issue of material fact that Defendants did not

engaging in an unlawful "taking" in violation of the 5th Amendment to the United States

Constitution.  ECF No. 15 at 27-35.  Plaintiffs do not oppose this position.  The Court agrees that

Defendants are entitled to summary judgment on this claim.

---

[4] Plaintiff also argue that Howland may be liable under *Monell* for failing to establish an appeals board to which Chief Brown's directives or orders could be appealed.  ECF No. 18 at 33. The Court rejects this argument for the same reasons it rejects Plaintiffs' other arguments.  There can be no *Monell* claim because Plaintiffs cannot demonstrate an Equal Protection claim.

(4:11CV02119)

The Fifth Amendment provides in part that private property shall not "be taken for public use, without just compensation."  Plaintiffs do not claim a *per se* taking because they do not allege that Defendants "physically intrude[d] upon [their] property."  *Waste Management, Inc. of Tennessee v. Metropolitan Government of Nashville & Davidson County*, 130 F.3d 731, 737 (6th Cir. 1997).  Nor did any regulatory taking occur because Defendants did not leave Plaintiffs with "*no* productive or economically beneficial use" of their property."  *McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010) (emphasis in original; *quoting Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1017, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992)).  Berk testified that although he felt he could not utilize the warehouse to its full capacity, there was never a period of time in which he was totally unable to use the warehouse for his distribution business.  ECF No. 15-5 at 154-55.  The record is also clear that Defendants' actions do not amount to a taking under the framework articulated in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978).  The "character of the governmental action" at issue in this case is not any law, regulation, ordinance or citation that actually deprived Plaintiffs of the use of the warehouse.  At issue, rather, is a fire official's written and verbal instructions to take action, to which Plaintiffs complied.  This type of governmental action does not arise to a taking under *Penn Central*.

**D. Substantive Due Process**

Defendants contend that Plaintiffs do not possess a viable substantive due process claim because Defendants' actions were related to a legitimate government interest.  Plaintiffs do not oppose this argument.  The Court agrees that Defendants have met their summary judgment burden.

18

(4:11CV02119)

The substantive component of the due process clause "forbids the government to infringe certain fundamental [rights] at all, no matter what process is provided . . . ." *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993).  Fundamental substantive due process rights are created by the Constitution.  *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985).  Government actions that burden the exercise of fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest.  *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000).  Government actions that do not affect fundamental rights or liberty interests and do not involved suspect classifications will be upheld if they are rationally related to a legitimate state interest.  *Id.* at 575.  "Property rights are created and defined not by the Constitution but by independent sources such as state law."  *Warren v. City of Athens, Ohio*, 411 F.3d at 708.

Assuming that a substantive due process claim could be asserted in this action, the record is clear that Plaintiffs cannot prevail.  Because Plaintiffs do not claim the burdening of a fundamental right under the Constitution, the Court must only determine whether Defendants' actions were rationally related to a legitimate state interest.  *See Fednav, Ltd. v. Chester*, 547 F.3d 607, 624 (6th Cir. 2008) ("'[a]ny *conceivable* legitimate governmental interest' will do" [emphasis in original]).  Here, Chief Brown's and Assistant Chief Thomas' actions were at all times related to the enforcement of the fire code.  The five feet stacking restriction was actually required by the fire code.  Moreover, Chief Brown's instructions that Plaintiffs make modifications to the warehouse were related to his fire safety concerns.  Defendants are entitled to summary judgment on this claim.

19

(4:11CV02119)

### E. Procedural Due Process

Plaintiffs allege in the complaint that they were deprived of due process because they never received written notice of any code violations, and Howland never appointed an appeals board to which Plaintiffs could contest the violations. ECF No. 3-1 at 7. Defendants assert that Plaintiffs were never actually deprived of any property for which procedural due process was required. ECF Nos. 15 at 29; 21 at 2-4. The Court agrees that procedural due process is not implicated in this case.

The Fourteenth Amendment provides in part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." "For a procedural due process claim, a plaintiff must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process." *Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 762 (6th Cir. 2005). The Sixth Circuit applies a two-part analysis to procedural due process claims. First, the court must determine whether the interest at stake is a protected property right under the Fourteenth Amendment. If it is, then the court must consider whether the deprivation of that interest contravened notions of due process. *Id.* at 762-63.

Under Sixth Circuit precedent, a plaintiff may prevail on a procedural due process claim by demonstrating that the property deprivation resulted from either "(1) an established state procedure that itself violates due process rights, or (2) a 'random and unauthorized act' causing a loss from which available state remedies would not adequately compensate the plaintiff." *Warren v. City of Athens, Ohio*, 411 F.3d at 709. "Unauthorized" means that the official in question did not have the power or authority to effect the deprivation, not that the act was contrary to law. *Id.* 709-10.

20

(4:11CV02119)

The record reveals that Howland never initiated any formal process or procedure to impair Plaintiffs' use of the warehouse.  It is undisputed that Howland did not at any time issue any municipal order, decree or citation against Plaintiffs.  Rather, the evidence shows that Chief Brown conducted inspections of the warehouse, spoke to Berk authoritatively, and wrote letters to Berk using municipal letterhead.  ECF Nos. 18-4; 18-18; 18-21; 15-5 at 48, 89.  In essence, Chief Brown *told* Berk to make changes to the warehouse and his storage practices, and Berk complied.  The Court is not aware of any law under which these acts, alone, could work a deprivation prohibited by the Constitution.  Nor could Chief Brown's actions be considered "random and unauthorized." Lastly, Plaintiffs did not possess an unfettered property right to stack their goods as high as they wished.  Plaintiffs acknowledge that the governing code restricted the stacking of their plastics to five feet, and they do not claim that the code itself is unconstitutional.

Summary judgment is therefore entered for Defendants on the Procedural Due Process claim.

### F.  Violations of the Ohio Constitution

The final causes of action alleged in the complaint are "Article I § 1, 14, and 16 to Ohio Constitution and 42 U.S.C. § 1983 Violations." ECF No. 3-1 at 8.  It is unclear why Plaintiffs allege § 1983 in conjunction with the State law violations, since § 1983 permits causes only for deprivations of *federal* rights.  To the extent that Plaintiffs bring State causes of action based upon violations of the Ohio Constitution, however, Defendants argue that they are entitled to summary judgment.  ECF No. 15 at 31.  Plaintiffs raise no opposition, and the law supports Defendants' position.

21

(4:11CV02119)

Plaintiffs allege that they were deprived of property without "due course of law" in violation of Article I, § 16.[5] ECF No. 3-1 at 8.  For the same reasons that Plaintiffs cannot prevail on their federal due process claims, they cannot succeed in their State due process claim.  *See Walsh v. Erie County Department of Job & Family Services*, 240 F. Supp. 2d 731, 757 (N.D. Ohio 2003) ("'there is no difference respecting due process of law in the Constitution of the United States and that of Ohio").  Plaintiffs also allege that Defendants effected an "unlawful seizure" of Plaintiffs' property in violation of Article I, § 14.[6] ECF No. 3-1 at 8. Although Article I, § 14, protects individuals from unreasonable searches and seizures; *State v. Goode*, 2013 WL 1092248 at *2 (Ohio App. 2 Dist. March 15, 2013); and provides the same protection as the Fourth Amendment to the United States Constitution; *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001); there simply is no evidence that Defendants seized any property belonging to Plaintiffs, or that Chief Brown and Assistant Chief Thomas conducted any unlawful searches of the warehouse.  Lastly, Plaintiffs allege that they were deprived of "liberty and property" in violation of Article I, § 1.[7] ECF No. 3-1 at 8. Yet, as the record shows, neither was denied to Plaintiffs.

---

[5] "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.  Suits may be brought against the state, in such courts and in such manner, as may be provided by law." Art. I, § 16, Ohio Const.

[6] "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized." Art. I., § 14, Ohio Const.

[7] "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety." Art. I, § 1, Ohio Const.

22

(4:11CV02119)

    Defendants are entitled to summary judgment on Plaintiffs' State law claims.

### IV. **Conclusion**

    Based on the foregoing, the Court grants summary judgment in favor of Defendants on the entire complaint.  Should Plaintiffs object to the Court's dismissal of all State claims, the Court rules, in the alternative, that it declines to retain jurisdiction over any remaining state claims and remands them to State court.  28 U.S.C. § 1367(c)(3).

    IT IS SO ORDERED.

  March 29, 2013                             /s/ Benita Y. Pearson
Date                                                  Benita Y. Pearson
                                United States District Judge